(59 App. Div. 25.)

### In re MOULTON.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

1. INTOXICATING LIQUORS—LICENSE—FALSE STATEMENTS—REVOKING.

Under Liquor Tax Law, § 17, subd. 8, providing that the consent of owners of dwellings situate within 200 feet of the place where liquors are to be sold shall not be required where the place was occupied as a hotel, or traffic in liquors was lawfully carried on there, on the 23d day of March, 1896, false statements in an application for license to sell liquors that there were no dwellings within 200 feet of the place where the traffic was to be conducted, which was used as a hotel and liquors sold therein under license, on March 23, 1896, were immaterial, and the license should not be revoked on that account.

2. SAME—HOTEL—CONTINUOUS OCCUPANCY.

Where the premises were occupied as a hotel, and liquors sold therein, at the time the liquor tax law took effect, and continued to be so occupied until a few months before application was made for a tax certificate for sale of liquors therein, during which time the premises were vacant because of a tenant being ejected for nonpayment of rent, the consent of

the owners of dwellings situate within 200 feet was not necessary to the legal issuance of a certificate, and a statement in the application that the place had been continuously occupied as a hotel was immaterial; continuous occupancy not being required by the liquor tax law.

Appeal from special term, Westchester county.

Application by Eliza Moulton to revoke a liquor tax certificate issued to Pasquale Acconcia. From an order revoking the certificate, the holder thereof appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Alfred R. Page, for appellant.
Lincoln G. Backus, for respondent.

WOODWARD, J. The petitioner, Eliza Moulton, instituted this proceeding under the provisions of the liquor tax law for the revocation and cancellation of liquor tax certificate No. 18,052, alleging that certain material statements made in the application therefor were false, in that Pasquale Acconcia in "said statement and application alleged that there were no buildings occupied exclusively as dwellings, the nearest entrance to which was within two hundred feet, measured in a straight line, of the nearest entrance to the premises where the traffic in liquors was intended to be carried on, when, as a matter of fact, there are at least three buildings occupied exclusively as dwellings" within that distance, two of which were owned by the petitioner. It was further suggested by the petitioner that the applicant, Pasquale Acconcia, had made a false statement in declaring that "trafficking in liquors was actually and lawfully carried on in said premises on April 30, 1892, and continuously since, when, as a matter of fact, the trafficking in liquors has only been carried on continuously since May 1, 1900, there, and that by said Pasquale Acconcia; that for some time prior and up to about the 23d day of October, 1899, trafficking in liquors was carried on in said premises by one Joseph McNamara, but that he on or about October 30, 1899, voluntarily surrendered up to the said Francis M. Carpenter, treasurer of the county of Westchester, his said liquor tax certificate, and the same was canceled"; and that "thereafter, and from the 23d day of October, 1899, to on or about the 12th day of March, 1900, the said premises were vacant." It also appears that one William Traphagen applied for and received a liquor tax certificate for the premises here involved on the 12th day of March, 1900, but that no liquors were sold under this certificate, nor were any liquors sold upon the premises after the 23d day of October, 1899, until the said Pasquale Acconcia secured the certificate in controversy, in April, 1900. The petitioner also alleges that "there is a building occupied exclusively as a church and school within two hundred feet of said premises." The matter was turned over to a referee to take the evidence, and, upon his report coming in, the court granted the order canceling and revoking the certificate; the question presented on this appeal being of law.

There are no material questions of fact, and we shall not feel called upon to consider the suggestions of counsel in reference to

matters outside of the petition. We will assume that, a license hav-
ing been granted for the sale of liquors on these premises under the
provisions of. the law as it existed prior to the enactment of the
liquor tax law in 1896, the trafficking in liquors which was conced-
edly carried on in the premises on the 23d day of March, 1896, was
lawful; and the evidence clearly establishes that the premises were
actually occupied as a hotel at the time. It is not necessary, to con-
stitute a hotel, that it should conform to the requirements of subdi-
vision 1 of section 19 of chapter 401 of the Laws of 1892. It was
a hotel, in the contemplation of the liquor tax law, if it was kept
open for entertaining strangers or travelers (15 Am. & Eng. Enc.
Law [2d Ed.] 766, and authorities there cited); and the question of
whether the license granted in 1895, and in force at the time of the
enactment of the liquor tax law, was a lawful license, is not material
to the question now before us. The real question is whether the
statements made in the application of Pasquale Acconcia, and which
are concededly untrue, are material; whether he would have been
entitled to the liquor tax certificate if his answers had correctly stated
the facts. If he would, then the statements are not material, and
they cannot invalidate his certificate. In re Kessler, 163 N. Y. 205,
207, 57 N. E. 402. By the provisions of subdivision 8 of section 17
of the liquor tax law, "when the nearest entrance to the premises
described in said statement as those in which traffic in liquor is to
be carried on is within two hundred feet, measured in a straight
line, of the nearest entrance to a building or buildings occupied ex-
clusively for a dwelling," it is necessary to file the consents in writ-
ing of at least two-thirds of the owners of such building or buildings;
but it is provided that "such consent shall not be required in cases
where such traffic in liquor was actually lawfully carried on in said
premises so described in said statement on the twenty-third day
of March, eighteen hundred and ninety-six, nor shall such consent
be required for any place described in said statement which was occu-
pied as a hotel on said last-mentioned date, notwithstanding such
traffic in liquors was not then carried on thereat." If it be con-
ceded that the license granted in 1895 by the local board of excise
was legal (and the presumption must always be that public officials
have done their duty), there is no question that the premises de-
scribed in the application for the certificate were actually occupied
as a hotel at the time of the liquor tax law going into effect, and
it was not necessary to have the consents required by the provision
of the statute above quoted. It is obvious, therefore, that, if the
applicant had stated that there were buildings used as residences.
or as churches and school houses within the prohibited distance, it
would not have affected his right to the liquor tax certificate, and
the statement, whether true or false, was utterly immaterial. In re
Hawkins, 165 N. Y. 188, 192, 58 N. E. 884. It is proper to state,
however, that the case last mentioned was decided by the court of
appeals subsequent to the time when the learned court at special
term made the order now under review.

But it is insisted that the trafficking in liquors was suspended
upon these premises from the 23d day of October, 1899, to about

the 15th day of May, 1900, and that the statement of the applicant that "trafficking in liquors was actually and lawfully carried on in said premises on April 30, 1892, and continuously since," being untrue, was a material misstatement of the facts, warranting the order granted by the court below. It appears from the evidence that the premises described had been used as a hotel for a series of years; that the building was constructed 10 or 12 years before the hearing, and had been used as such up to about the 23d day of October, 1899, when the tenant, Joseph McNamara, was dispossessed for the nonpayment of rent. The property belonged to the Traphagen estate at that time, and was subsequently sold to one Peter Cunneen. In the meantime one William Traphagen took out a liquor tax certificate, on the 12th of March, 1900, and, without opening the place; assigned the same to Pasquale Acconcia on the 26th of April, 1900. The latter, after making repairs, opened the place on the 15th day of May, 1900, under the certificate which was subsequently revoked by the order appealed from. There seems to be no doubt that the statement° of Acconcia that the premises had been used for trafficking in liquors since April, 1892, was made in good faith; that he believed that this was a substantially true statement of the facts,—he having come into possession while the tax certificate issued 'to William Traphagen was in force, and resuming the business as soon as necessary repairs were made. But, whether the statement was true or false, it does not affect the right of the applicant to the certificate here involved. The premises were actually occupied as a hotel on the 23d day of March, 1896, and the place in question was expressly excepted from the provisions of the law which required consents to be filed. If there had been no liquors sold upon the premises at any time, either before or after the enactment of the liquor tax law, the applicant would have been entitled to the certificate without filing consents, and the question of whether liquors had been continuously sold upon the premises was not of the slightest consequence. The court of appeals, in Re Hawkins, supra, goes so far as to hold that where the premises were actually occupied for the purpose of lawfully trafficking in liquors on the 23d day of March, 1896, "it is not necessary that it should have been continuous down to the time of the filing of the application for a certificate," and points out that "the word 'continuously,' which is used in the same subdivision, refers to a case where consents are necessary for other places, and, having been once obtained and filed, are preserved and kept in force so long as the place shall be continuously occupied for the traffic." The court further declares, in the same case that "we do not intend to hold that the privilege conferred by the statute, which secures to the property owner a right to the certificate without consents, as to places of this character, may not be lost or abandoned by the intentional act of the owner of the property," but it indicates that the intention must be clearly established that the "owner intended to discontinue the liquor traffic at the place." There is no doubt that if the owner of the premises here involved had abandoned it as a hotel, and had put in a stock of groceries or a gristmill, it would so far have lost its character as a hotel as to

come within the general rule laid down by the statute; but the mere fact that the premises were without a tenant during a period of several months evidences no intention on the part of the owners to abandon the property right secured by the statute, and a mistake on the part of the applicant on a question which did not affect his right to the certificate is of no consequence.

It is not alleged in the petition that any false statement was made in reference to a church or school house, and, if there had been, it is governed by the same rules as to dwellings; the exceptions being the same in effect.

The order appealed from should be reversed, and the proceeding dismissed, with costs.   All concur.