County Court, Essex County, January, 1903. Reported. 39 Misc. 689.

Matter of the Application of BYRON R. BREWSTER for an Order Revoking and Cancelling Liquor Tax Certificate No. 28,566 Issued to FRANK L. HILLMAN.

Liquor Tax Law—"Hotel"—Changes in the building—Abandonment—Innocent and immaterial statement as to continuous occupation.

A place, kept open for entertaining strangers or travelers and which receives all who come to it, without any previous agreement as to length of stay or terms of entertainment, is a "hotel" within the Liquor Tax Law.

To be a "hotel" it need not keep a safe for valuables or have a register for guests or provide stable accommodations.

The fact that it displays a sign "Boarding House" is not controlling as to its character.

A building occupied exclusively as a hotel on March 23, 1896, does not lose its privilege or change its identity merely because after said date the location, in it, of the barroom has been changed.

A hotel cannot be deemed to have been "continuously occupied" as such since March 23, 1896, where it appears that since that date a considerable portion of it has at various times been rented to tenants and used for other purposes.

A liquor tax certificate cannot lawfully be revoked merely because a person, applying for it for premises which were occupied exclusively as a hotel on March 23, 1896, innocently and in good faith made in his application the misstatement that the premises had since been continuously occupied as a hotel.

Such a statement is, in such case, not material or necessary.

APPLICATION for an order revoking and cancelling a liquor tax certificate.

Francis A. Smith, for petitioner.

Adelbert W. Bynton, for Hillman.

KELLOGG, R. C., J. It is alleged in the petition that the liquor tax certificate was issued to said Frank L. Hillman upon his written application duly verified, stating among other things:

*First.* That the said premises were actually occupied as a hotel on March 23, 1896.

*Second.* That for the past nine or ten years the said premises had been continuously occupied as a hotel.

*Third.* That the said Hillman might lawfully carry on such liquor traffic upon said premises and was not within any of the prohibitions of the law.

*Fourth.* That the statements so made by Hillman were material statements and were false. That the said premises are within two hundred feet of the nearest entrance of buildings occupied exclusively as dwellings.

The defendant, answering the said petition, admits the granting of the said certificate and the statements on which the same was granted; that he has trafficked in liquors thereunder as alleged and denies upon information and belief each and every other allegation in said petition contained, and alleges that said certificate was lawfully issued, and that each and every condition necessary for the issuing thereof existed; that he is informed and believes the said premises were on the 23d day of March, 1896, actually occupied as a hotel; and that he was under none of the prohibitions of the Liquor Tax Law (Laws of 1896, chap. 112).

These issues upon an order to show cause were sent to a referee to take and report the evidence to the court. The referee has filed his report and the proceeding is now before me, under the practice prescribed in subdivision 2 of section 28 of the Liquor Tax Law, for an order revoking the said liquor tax certificate.

Were the premises actually occupied as a hotel March 23, 1896, when the Liquor Tax Law became operative, and were they continuously occupied as a hotel thereafter and until the liquor tax certificate was issued to Hillman? If they were, the applicant is entitled to the certificate, and it is immaterial whether or not the liquors were sold upon the premises. This brings us to the ques-

tion, what is a legally constituted hotel. The terms " Inn " and " Tavern " as used in the statute regulating taverns, etc., are synonymous. *Overseers, etc., Crown Point* v. *Warner,* 3 Hill, 150. The legal definition of an inn is the same as what is understood in this country by a hotel. An inn or hotel is a house where all who conduct themselves properly and who are able and ready to pay for their entertainment are received, if there is accommodation for them, or who, without any stipulated engagement as to the duration of their stay, or as to the rate of compensation, are, while there, supplied at a reasonable charge with their meals, their lodgings and such services and attention as are necessarily incident to the use of the house as a temporary home. *Cromwell* v. *Stephens,* 3 Abb. Pr. (N. S.) 26. This is the same definition applied to the term " hotel " by the Liquor Tax Law, section 31, with the added words, " and in which the only other dwellers shall be the family and servants of the hotel keeper; and which shall conform to the following requirements if situated in a city, incorporated village of twelve hundred or more  *  *  *  inhabitants. 1. The laws, ordinances, rules and regulations relating to hotels and hotel keepers  *  *  *  shall be fully complied with." The petitioner claims that the omission to keep a register and to post notices as to deposit of valuables and the failure to have stable accommodations go to show that the premises were not run as a hotel. To so hold would be a technical and strained construction of the law, as many places which are recognized in the country as hotels do not have a safe, register or stable; besides the statute requiring the posting of notices was enacted for the protection of the hotel keepers and to limit his liability and not as a requirement necessary towards the establishing of a hotel. It is not necessary that the house be kept only for the reception of travelers. It is not necessary to constitute a hotel that it shall conform to the requirements of subdivision 1 of section 19 of chapter 401 of Laws of 1892, or of section 31, chapter 112 of Laws of 1896. It was a hotel in the contemplation of the Liquor Tax Law if it was kept open for entertaining strangers or travelers. *Matter of Moulton* v. *Acconcia,* 59 App. Div. 27. See also Liquor Tax Law (L. 1901, ch. 640, § 7). It is sufficient that all who come to the house without any previous agreement as to duration of their stay or terms of their entertainment are received as guests. *Taylor* v. *Monnot,* 4 Duer, 116; *Wintermute* v. *Clarke,* 5 Sandf. 242.

Charles H. Commings, the owner of the premises, swears he was in sole occupancy of the premises from 1893 and until April 1, 1896; that during that time he entertained guests there for hire, received the traveling public generally, any one who came, either for single meals, lodging or board. " I put the building up for a boarding-house or public house to keep people. I used it for no other purpose, sold some groceries and dry goods. Had no office only the newsroom used for men to wash and sit in. It was a hotel except we did not sell any whiskey. I put up sign ' Boarding House ' and kept boarders." This witness was asked " Then don't you honestly think that your house was not a hotel but a boarding house." He answered: " Not more than lots of other hotels. I can't see any difference between that house as it was run and a hotel that doesn't sell drinks. I put up the sign ' Boarding House ' so that people could know that people could come in there and be taken for a week, or meals, or lodging." The respondent offered in evidence a paper given by this witness to Hillman to be used on the application for a liquor tax certificate and sworn to, May 12, 1892, by the witness stating that prior to March 23, 1896, he was and had been for about four years the owner and proprietor of the hotel on Commings Corner in Main street in said village known as " Commings Hotel " or " Commings House " and that the building had been continuously occupied as a hotel since that time. The witness swore that these statements made by him were true. Sarah Commings, the wife of the said Charles H. Commings, swore that they furnished meals and lodgings to any one that came and applied; that the house was open to all such at any time. We called it the " Commings Boarding House." The designation " Boarding House " or "Hotel " by witnesses is not controlling or material. See *Matter of Rasquin,* 37 Misc. Rep. 693.

Was this a hotel March 23, 1896? Although the accommodations for the guests of the house were limited and not such as are ordinarily expected at a hotel, I think the contention of the respondent that the premises were occupied as a hotel on March 23, 1896, has been established. In so far as this point is concerned, the application must be denied.

This brings us to the consideration of the second contention, that the premises have been continuously occupied as a hotel since the 23d day of March, 1896.

The petitioner claims that the building occupied by Commings

was not the same building that Hillman purchased and claims, therefore, it could not have been continuously occupied as a hotel.

The evidence on this point is that the house was enlarged, by putting the barber shop in the basement and an addition on the rear, the barber shop now being the barroom. The basement was a part of the building in March 23, 1896, but was not finished off into a room. Does finishing this basement into a room and using it as a barroom change the building as contemplated by the Liquor Tax Law? If this be true then a person keeping a hotel cannot move his bar from one part of the building to a room in another part. The petitioner cites *Matter of Haight*, 33 Misc. Rep. 544, as supporting his contention. That was a case where an entirely different and separate building was purchased and connected with the old building by building between, and the application was for the privilege of selling liquor in the " New Building." The court held that the " building purchased was not entitled to the privilege existing in favor of the hotel property. The law unquestionably intended that the certificates should be confined strictly to the premises to which they were applicable, and not to such premises as might, in the future be connected with the original premises, but did it intend that it should not apply to the original premises, that were entitled to the exemption, simply because the basement was made into a barroom. I think not. In *Matter of Moulton*, 59 App. Div. 29, the court by inference sustains this position. This case was affirmed in 168 N. Y. 645.

The petitioner further contends that if the place in question was a hotel at the time the Liquor Tax Law was passed, it was abandoned as such and the exception in the statute relieving Hillman from the necessity of procuring the consents of residents does not apply here. It was held in *Matter of Kessler*, 163 N. Y. 208, that: " In order to deprive the place of the privilege conferred by the statute it must appear that there was a real and substantial abandonment of the business by the occupant.

" When that is shown it will terminate the privilege, even though the suspension should be for but a brief period. But where the occupant is compelled to suspend for a brief period by stress of circumstances, or from an accident, * * * the right will not be lost, providing the business is resumed at the first reasonable opportunity." The plain purpose of the law was, that when the business in such places has been once abandoned, it

should not be resumed except with the consent of the residents. In *Matter of Hawkins,* 165 N. Y. 192, the court held that: " The privilege not attached to the property in perpetuity, and is not a thing that necessarily and under all circumstances runs with the land. It may be lost by abandonment, or nonuser, when the facts and circumstances are such as to justify the conclusion that the owner intended to discontinue the liquor traffic at the place. When that intention is clearly established the period of time during which the place is vacant, or used for other purposes, is not very material." And further where the statements made are immaterial, although technically false, they are not false within the meaning of the statute.

Having decided that the place was a hotel March 23, 1896, the only remaining question for us to consider is has it been, within the meaning of the statute, continuously occupied as a hotel since. The petitioner contends that it has not been run as a hotel but as a boarding-house, while the respondent claims the reverse. The evidence shows that a large majority of the people staying at the house were persons who stayed there for a longer time than one day and paid for their accommodations by the week if they stayed one week or longer or at a stipulated price per week. On the other hand the evidence shows that any one who came there and asked for lodging and meals were received and entertained, they paying twenty-five cents per meal, and the same sum for lodging, and each witness, who had kept the house since March 23, 1896, testified that they always kept any person who came there and asked for meals and lodgings, if they had the accommodations. Merely fixing the price to be paid does not make the person a boarder rather than a guest. *Hancock* v. *Rand,* 94 N. Y. 10, and cases cited. See also *Metzger* v. *Schnabel,* 23 Misc. Rep. 699. There are numerous decisions holding that, even where there is a special agreement as to time and price, it does not absolutely disturb the relationship of innkeeper and guest, although it seems to be well settled that a guest, as distinguished from a boarder, is bound for no stipulated time and stops for as long or short time as he pleases, paying, while he remains the customary charge; still a person may pay by the week at a hotel and not change the character of the house to a boarding-house. So far as the question of entertaining people is concerned, I think the evidence sustains a finding that the place has been run as a hotel within the fair meaning of the law. On

the other hand the evidence shows that some parts of this building were used for other purposes since Commings gave up running the house, rooms were rented and occupied by a dressmaker, who kept house in the rooms she occupied and other similar occurrences; in one instance leaving only five rooms for guests. Without going further into a discussion of the evidence taken before the referee, but, after a thorough and careful examination of all of the evidence, it seems to me that under the evidence presented I must hold that the respondent has failed to establish his contention that the premises have been continuously occupied as a hotel within the meaning of the Liquor Tax Law, since the passage of that law, March 23, 1896.

The respondent Hillman claims that, as he acted in good faith, the statement as to the continuous occupancy of the hotel is immaterial and the application must be dismissed. The prohibition contained in section 24, subdivision 2, of the Liquor Tax Law, provides that the prohibition therein shall not apply to a place which, on the 23d day of March, 1896, was lawfully occupied as a hotel. Section 17, subdivision 8, of the same law, provides for filing the certificates in a case where the premises are within the prescribed limits except that such consent shall not be required for any place described in said statement which was occupied as a hotel March 23, 1896, notwithstanding the traffic in liquors was not carried on thereat. The Court of Appeals in considering a similar case (165 N. Y. 191), said "The statement in the application upon which the order was based, even if untrue, was wholly immaterial, and an order revoking a license for a false statement cannot be predicated upon such a representation. There was power under the law to issue the certificate, whether the business had been continuously carried on at the place in question or not after the enactment of the present law. The statute does not require the use of the premises for the purpose of the traffic to be continuous. The word 'continuous' does not apply to that provision of the statute, or to the exception therein in favor of places like this."

I do not see why the same principle will not apply to a place occupied as a hotel March 23, 1896, although no liquor was sold: Again at page 192 the court says: "Nor is it necessary to produce the consents required by subdivision 8 of section 17. All that is necessary to state in order to relieve the applicant from the necessity of filing consents is that the traffic was actually and

lawfully carried on upon the premises March 23, 1896. The word 'continuously' which is used in the same subdivision, refers to a case where consents are necessary for other places, and having been once obtained and filed, are preserved and kept in force so long as the place shall be continuously occupied for the traffic. Inasmuch as no consents were necessary and the place in question was expressly excepted from the provisions of the law which required consents to be filed, the statement in the application, whether true or false, was utterly immaterial. In *Matter of Kessler*, 163 N. Y. 205, this question was not raised or passed upon. It was assumed by both parties in that case that it was necessary under the statute that the traffic should be continuous in order to entitle the applicant, who had not procured the consents prescribed, to the certificate. Clearly it is not, as will be seen by a careful reading of the statute. All that was decided in that case was that, under the facts and circumstances disclosed, the traffic was continuous within the fair meaning of the statute." It was also held in the Kessler case that: "The false statements in an application for a certificate which will justify its revocation under the statute must relate to some material matter of fact, and it must be shown that such fact was wilfully misstated by the applicant."

There is nothing in this case to show the statements made by Hillman were wilfully false. The evidence shows that in Hillman's application for a liquor tax certificate, his grantor made a statement under oath, " that prior to March 23, 1896, he was and had been for about four years the owner and proprietor of the hotel on Commings' Corner in Main street, known as Commings' Hotel or the Commings' House, and that said building had been continuously occupied as a hotel since that time." Hillman swore he never was inside of the house until he bargained for it, some few months before he made his application for the certificate. If I correctly construe the meaning of the court in 163 and 165 New York, *supra,* the principle applied in 163 New York is the same as the case under consideration excepting that the court held in that case that the premises had been continuously occupied as a hotel, while in this case I hold they had not been. We find ourselves confronted with the decision of the Appellate Division, holding that the question of good faith is immaterial, and the Court of Appeals, deciding that it must be shown that the facts were wilfully misstated. If it must be shown that the

facts were wilfully mistated then certainly the question of good faith is material, and the evidence, failing to show that the statements of Hillman were wilfully misstated and on the contrary showing that he acted in good faith, it seems to me that, under the decisions of the Court of Appeals, the application to revoke and cancel the said certificate must be denied.

Application denied with costs.