BENJAMIN F. FORBELL, Respondent, *v.* THE CITY OF NEW
YORK, Appellant.

WATERCOURSES — DIVERSION OF SUB-SURFACE WATERS BY MUNICIPAL
WATER WORKS.   A municipal corporation which, by the operation of a
water system consisting of wells and pumps on its own land, taps the sub-
surface water stored in the land of an adjacent owner and in all the con-
tiguous territory, leads it to its own land and by merchandising it pre-
vents its return, whereby the value of the land of such owner is impaired
for agricultural purposes, is liable to him in trespass for the damages occa-
sioned thereby.

*Forbell* v. *City of New York*, 47 App. Div. 871, affirmed.

(Argued October 10, 1900; decided November 20, 1900.)

APPEAL from a judgment of the Appellate Division of the
Supreme Court in the second judicial department, entered
upon an order made January 9, 1900, affirming a judgment in
favor of plaintiff entered upon a decision of the court on trial
at Special Term.

The judgment grants a perpetual injunction restraining the
city of New York from operating its engines, driven wells
and pumping stations known as the Spring Creek Pumping
Station in the borough of Queens, city of New York, on the
conduit line near the Kings county boundary line, and awards
past damages to the plaintiff in the sum of $6,000, together
with the costs of the action.

The plaintiff was a lessee of certain farming lands situated
near Spring Creek within the county of Kings.   He used a
portion of the lands in question for the purpose of growing
celery and water cresses.

The city of Brooklyn constructed a pumping station in the
place in question early in 1885, and in 1894 sunk additional
wells and made an additional pumping station.   The effect of
pumping at these stations was to lower the underground water
table on this land, and thus made it unfit for the cultivation
of celery or water cresses, and the crops failed for many years
prior to the commencement of this action in 1898.

*John Whalen, Corporation Counsel* ( *William J. Carr* of counsel), *for appellant.* The owner of land may dig ditches or sink wells, or in any other manner exercise his dominion over his own land, without being liable at law for the interception or diversion of any underground percolating waters consequent upon such use of his own property. (*Ellis* v. *Duncan*, 29 Barb. 230; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Pixley* v. *Clark*, 35 N. Y. 520; *Vil. of Delhi* v. *Youmans*, 45 N. Y. 362; *Bloodgood* v. *Ayers*, 108 N. Y. 400; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424; *Acton* v. *Blundell*, 12 M. & W. 324; *Ranstrom* v. *Taylor*, 33 L. & Eq. 428; *Broadbent* v. *Ramsbotham*, 34 L. & Eq. 553; *Chasemore* v. *Richards*, 7 H. L. Cas. 349.) A municipal corporation using its own land, for the purpose of obtaining a water supply for its inhabitants, possesses all the rights over its own property as to underground percolating waters which are incident to the rights of an individual owner over his own soil. (*Chasemore* v. *Richards*, 7 H. L. Cas. 349; *G. J. C. Co.* v. *Shugar*, L. R. [6 Ch. App.] 483; *Mayor, etc.,* v. *Pickles*, L. R. [App. Cas. 1895] 587; *Proprietors, etc.,* v. *B. W. S. Co.*, 149 Mass. 478; *Van Wycklen* v. *City of Brooklyn*, 118 N. Y. 424.)

*Charles Coleman Miller* for respondent. The underground percolating waters in plaintiff's land belong to him, and the abstraction of them by defendant is unlawful. (*Pixley* v. *Clark*, 35 N. Y. 531; *Smith* v. *City of Brooklyn*, 18 App. Div. 340; Gould on Waters [2d ed.], § 280; Angell on Watercourses, § 109.) Defendant is a trespasser. (*Prewitt* v. *Clayton*, 5 B. Mon. 4; *Radcliff* v. *Mayor, etc.*, 4 N. Y. 195; *Covert* v. *City of Brooklyn*, 13 App. Div. 188.) The rule of no liability for the interception of underground waters has no application. (*Smith* v. *City of Brooklyn*, 160 N. Y. 357; *Ellis* v. *Duncan*, 29 Barb. 230; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Village of Delhi* v. *Youmans*, 45 N. Y. 362.)

Landon, J. The defendant makes merchandise of the large quantities of water which it draws from the wells that it has

sunk upon its two acres of land. The plaintiff does not complain that any surface stream or pond or body of water upon his own land is thereby affected, but does complain and the courts below have found that the defendant exhausts his land of its accustomed and natural supply of underground or subsurface water, and thus prevents him from growing upon it the crops to which the land was and is peculiarly adapted, or destroys such crops after they are grown or partly grown.

The defendant does not take from his own land simply its natural or accustomed supply or holding, but by means of its appliances and operations it takes and appropriates a large part of the natural and accustomed supply or holding of the plaintiff's land. The case is not one in which, because the percolation and course of the sub-surface waters are unobservable from the surface, they are unknown and thus so far speculative and conjectural as to be incapable of proof or judicial ascertainment.

Before the defendant constructed its wells and pumping stations it ascertained, at least to a business certainty, that such was the percolation and underground flow or situation of the water in its own and the plaintiff's land that it could by these wells and appliances cause or compel the water in the plaintiff's land to flow into its own wells, and thus could deprive the plaintiff of his natural supply of underground water. This it has accomplished just as it expected to do it; the evidence to that effect is about as satisfactory and convincing as if the case were one of surface waters.

That the defendant has so used its own as to injure the plaintiff there is no question. The question is whether the plaintiff has or ought to have in the just administration of the law a remedy.

In *Smith* v. *City of Brooklyn* (160 N. Y. 357), a case in which the defendant, by means of the same acts and appliances as it employed in this case, lowered the water in the plaintiff's surface stream and pond, this court in holding the defendant liable for the damage thus caused, carefully refrained from considering the question whether the defendant would

have been liable if it had simply lowered the sub-surface level
or body of underground water not contributing to the supply
of plaintiff's surface stream or pond.

It may be conceded that the letter of the law, as expounded
in many cases in this state, denies liability. (*Ellis* v. *Duncan*,
21 Barb. 230; *Goodale* v. *Tuttle*, 29 N. Y. 459; *Pixley* v.
*Clark*, 35 N. Y. 520; *Village of Delhi* v. *Youmans*, 45 N.
Y. 362; *Phelps* v. *Nowlen*, 72 N. Y. 40; *Bloodgood* v.
*Ayers*, 108 N. Y. 400; *Van Wycklen* v. *City of Brooklyn*,
118 N. Y. 424.)

The earlier cases followed the law as stated in *Acton* v.
*Blundell* (12 Mees. & W. 324) and *Greenleaf* v. *Francis* (18
Pick. 117). So far as the extraction or diversion of under-
ground water upon the land of one proprietor affects no
surface stream or pond upon the neighboring land, but simply
the underground water therein, the rule is still adhered to.

The reasons usually assigned for the rule are that the owner
of the soil may lawfully occupy the space above as well as
below the surface to any extent that he pleases; that the
water stored or held in his soil so long as it remains there is
— unlike water flowing in a surface stream — a part of the
soil itself. (*Barkley* v. *Wilcox*, 86 N. Y. 140.) That a dif-
ferent rule would prevent the reasonable use and improve-
ment of land; that without a grant or positive statute there
can be no easement in one parcel of land for the sub-surface
support or supply of sub-surface water in another parcel; that
the percolation and underground flow of water are out of
sight and their exact operation and courses are conjectural
and not susceptible of actual observation and proof; and
finally that the damages, if any, are the remote or indirect
consequence of lawful acts.

It may be conceded that these reasons, or some of them,
were ample to afford the proper rule of decision in the cases
to which they were applied. We do not intend to impair
their applicability to like cases. But there are features of
this case to which these reasons do not apply. As already
intimated, the defendant installed its pumping plant knowing

that the underground operation and habit of this store of water in its own and neighboring lands, including the plaintiff's, a total area of from five to eleven square miles, would enable it to capture the greater part of it.

In the cases in which the lawfulness of interference with percolating waters has been upheld, either the reasonableness of the acts resulting in the interference, or the unreasonableness of imposing an unnecessary restriction upon the owner's dominion of his own land, has been recognized.

In the absence of contract or enactment, whatever it is reasonable for the owner to do with his sub-surface water, regard being had to the definite rights of others, he may do. He may make the most of it that he reasonably can. It is not unreasonable, so far as it is now apparent to us, that he should dig wells and take therefrom all the water that he needs in order to the fullest enjoyment and usefulness of his land as land, either for purposes of pleasure, abode, productiveness of soil, trade, manufacture, or for whatever else the land as land may serve. He may consume it, but must not discharge it to the injury of others. But to fit it up with wells and pumps of such pervasive and potential reach that from their base the defendant can tap the water stored in the plaintiff's land, and in all the region thereabout, and lead it to his own land, and by merchandising it prevent its return, is, however reasonable it may appear to the defendant and its customers, unreasonable as to the plaintiff and the others whose lands are thus clandestinely sapped, and their value impaired.

The learned trial judge found that the acts of the defendant were a trespass. No doubt trespass may be committed by the projection of force beyond the boundary of the lot where the projecting instrument is operated. Injuries caused by explosions are familiar instances. We think the finding justified by the particular facts of this case. Force is not necessarily direct violence. It may be produced by the employment of such material agencies or instruments as become effective by the co-operation of the forces of nature, and such is the case before us.

The distinction between a case like this and the cases of percolating waters in which liability has been denied was well pointed out by the learned judge who wrote for the Appellate Division in *Smith* v. *City of Brooklyn* (18 App. Div. 340). We refer to the opinion as a valuable contribution to the discussion of the subject.

We more readily conclude to affirm, because the immunity from liability which the defendant claims violates our sense of justice. It seems to pervert just rules to unjust purposes; it does wrong under the letter of the law in defiance of its spirit. The case is certainly unlike those which have preceded it in this court, and we may consider the rules announced in the previous cases in the light of the cases themselves. We recognize the fact that the water supply of a great city is of vastly more importance than the celery and water cresses of which the plaintiff's land was so productive, before the defendant encroached upon his water supply. But the defendant can employ the right of eminent domain, and thus provide its people with water without injustice to the plaintiff.

The judgment should be affirmed, with costs.

PARKER, Ch. J., BARTLETT, HAIGHT, MARTIN and VANN, JJ., concur; O'BRIEN, J., not voting.

Judgment affirmed. _____