(37 Misc. Rep. 693.)

## In re RASQUIN.

(Supreme Court, Special Term, Queens County. April, 1902.)

1. LIQUOR-TAX CERTIFICATE—APPLICATION—REVOCATION.
Where the application for a liquor-tax certificate falsely stated that the applicant had procured consents from the owners of two-thirds of the buildings within the legal radius occupied exclusively for dwelling houses, the certificate will be revoked.

2. SAME—CONSENT TO ISSUANCE.
That the owner of a liquor-tax certificate procured small signs to be placed on buildings in the neighborhood of his saloon to create the false impression that they were not occupied exclusively for dwellings, in order to evade a provision of the statute as to consents required in such case, was insufficient to change the character of the buildings from that of dwelling houses to places of business.

In the matter of the petition of William Rasquin, Jr., for an order revoking a liquor-tax certificate. Petition granted.

William Rasquin, Jr., in pro. per.
Hitchings, Stephens & Palliser, for defendant.

GARRETSON, J. If the defendant has not filed with his application for the certificate the consents required by section 11 of the liquor tax law, and if his statements in the application in respect thereto were false, such statements being material, this court has no duty to perform other than to revoke and cancel the certificate. Briefly stated, the petitioner alleges the defendant's delinquency upon both of the grounds above mentioned. It cannot be successfully disputed—indeed, it is conclusively established, if not virtually admitted, by the defendant's counsel in their brief presented upon the final submission of the proceeding—that there are six buildings the nearest entrance to which is within 200 feet, measured in a straight line, of the nearest entrance to the premises where the traffic in liquors is intended to be carried on. These are located upon the map annexed to the petition, and are numbered thereon from 1 to 6, respectively. The defendant stated in his application that there were only three of these occupied exclusively as dwellings, and he obtained and filed consents of the owners of two, being the buildings numbered 4 and 5 on the map referred to. The building numbered 2 on said map is owned by the petitioner, and concededly is occupied exclusively as a dwelling. It is inferable from the papers and from what has transpired upon the hearing that this is the

third building intended to be referred to by the defendant in his application. The petitioner alleges that the buildings numbered 5, 6, and 1 upon the map are all occupied exclusively as dwellings, and the defendant, while admitting their occupancy for residential purposes, claims that such occupancy is not exclusive, in that in each of them some trade or business is carried on by the occupant. As to the building numbered 5, it appears that it was rented to be used as a dwelling, and was occupied as such by a tenant named Fenton. There is no evidence that such occupancy was not exclusive, other than that there had been upon the front and upon the rear of the building a small sign having thereon the words, "E. Fenton, Disinfectants." Assuming that these signs were upon the building at the time that the defendant's application was made, that circumstance would be intrinsically of no probative force to establish as a matter of fact that any business relating to the manufacture or sale of disinfectants was being carried on there. The words on the sign import nothing more than their ordinary and usual signification. In the absence of testimony showing the actual character of the occupancy, it cannot be inferred that this building was not occupied exclusively as a dwelling. The building numbered 6 was at the time occupied as a residence by the defendant and his wife with their four children. He was a tenant of the same owner or landlord who had rented the adjoining house to Mr. Fenton. Coincidently with the alleged appearance of the Fenton sign it is claimed that the front and rear of this building also bore a small sign with the words, "Mrs. Hennin, Dressmaker," thereon. From the testimony of the defendant and his wife it appears that the latter had for a short period of time done dressmaking at her residence without the aid of any person, being occasionally assisted in her household duties by a servant called in for that purpose. The circumstances relative to this building and its occupancy are similar in all respects to those in Re Ruland, 21 Misc. Rep. 504, 47 N. Y. Supp. 561, except that in that case there was no sign displayed upon the house. Without discussing how and to what extent the presence of the sign would change, as a matter of fact, the actual character of the occupancy shown to exist, the testimony in the case at bar justifies and requires the finding that the existence of the signs upon both of these houses at the time of the making of the application, or at any time prior or subsequent thereto, was an act for which the defendant was responsible; conceived and done for a fraudulent purpose,—that of creating the false impression and belief that the buildings were not occupied exclusively as dwellings,—to the end that the liquor-tax certificate could be obtained without reckoning these buildings among the number as to which the consent of two-thirds of the owners thereof was an essential prerequisite. If any confirmation of this finding can be said to be required from the other relevant and cogent testimony in this case, abundantly sustaining it, including that of the defendant himself, it is furnished by the circumstance that the defendant had applied to the owner of these two houses for the required consents, and had been refused. It is not needful that it should be

definitely determined whether the occupancy of the house numbered 1 was exclusively residential or not. It therefore appears that there were five buildings within the radius of 200 feet from the nearest entrance to the premises where the defendant intended to traffic in liquors; that he obtained and filed the consents of the owners of but two of them, when the law required the consents of four, or two-thirds of the number; and that the statements in his application in respect thereto were false when made. It follows that the liquor-tax certificate in question must be revoked and canceled. Petition granted, with costs and disbursements to be taxed as in a special proceeding.

Petition granted, with costs and disbursements.