The People of the State of New York, Respondent, v. The New York Carbonic Acid Gas Company, Appellant.

The People of the State of New York, Respondent, v. The Geysers Natural Gas Company, Appellant.

The People of the State of New York, Respondent, v. The Lincoln Spring Company, Appellant.

The People of the State of New York, Respondent, v. The Natural Carbonic Gas Company, Appellant.

Waters and watercourses — mineral springs — construction and application of chapter 429 of Laws of 1908 prohibiting the pumping of subterranean mineral waters — action thereunder to restrain pumping at Saratoga Springs — evidence — what defendants may show — presumption of validity of the statute — right of the people of the state to bring an action under the statute.

The adoption of the doctrine of a reasonable use of one's property in subterranean percolating waters, to be measured by the rights and necessities of others, is a modification of the earlier rule, obviously resulting from a consideration of the differing conditions of the age and of the possibilities of an unlimited and destructive use from modern engineering methods.

Chapter 429 of the Laws of 1908 does not operate to prohibit, as unlawful, all pumping from wells bored into the rock, of mineral waters holding in solution mineral salts and an excess of carbonic acid gas, for the purpose of extracting, liquefying or vending, separately, such gas as an article of commerce, and the prohibition is not to be enforced irrespective of whether the use by the defendants of their properties is a reasonable one or not, relatively to the legal rights of other landowners. The third clause of the statute was upheld in *Hathorn* v. *Natural Carbonic Acid*

*Gas Co.* (194 N. Y. 326), distinctly upon the ground that it would be enforceable within the operation of the settled common-law rule, which forbids an unreasonable use of sub-surface waters to the injury of another's rights.

While a landowner is entitled to make every use of the waters flowing under the surface of his land, which might be for the legitimate improvement or enjoyment of his lands, however it interferes with others as a natural consequence, if his use is unreasonable, in the sense that he is attempting to increase the flow of the waters upon his lands for a purpose not connected with such improvements or enjoyment, and to the destruction or diminution of the flow under the adjacent lands of others, he is committing an unlawful act. The waste committed by an owner in his use of his property, which may be restrained, must appear to be such as affects the rights of other landowners to the appropriation of the sub-surface waters, existing as a common source of supply and within the area subject to the influence of the mechanical contrivances for their increased flow.

The act and the authority to enforce it by an action in the name of the People are to be construed, not as intending to exercise governmental power arbitrarily, but as promulgating a rule, with authority to a taxpayer, or to the law officer of the state, to enforce obedience to it by an action which should regulate the appropriation and use of the common natural supply by owners of lands coming within the provisions of the statute. It is quite within a reasonable exercise of the police power to regulate such rights.

In an action to enforce the provisions of the statute and to restrain defendants from an alleged unreasonable use of the subterranean waters at Saratoga Springs, defendants are entitled to show the situation of their wells, the necessity of the pumping appliances used, that no acts of theirs, in that respect, affected any other spring, or well, or resulted in injury to any other person, and also to give evidence to show the comparative effects upon the sources of supply of the mineral waters and gas, of pumping from wells which are bored into the rock, and from those which are driven into the soil.

Defendants are entitled to give any competent evidence that they have, in support of their defense to the validity of the act, that, as its provisions rested upon no real basis in discriminating against wells bored into the rock, the prohibition was an unreasonable exercise of power. Such proof is not objectionable, because going to show the statute to be on its face invalid; it bears upon the reasonableness of its classification and goes to show whether its provisions, in attempting a regulation of the conflicting rights of all to a common, natural supply, operated equally upon the rights of a class of property owners.

The People are entitled to rest upon the presumption of the validity of the provisions of the act in question and upon the support to their case

in the admissions made and in the inferences of facts from the operation of natural laws, until the evidence of the defendants establishes, or tends to establish, their defenses that the statutory provisions are inapplicable to their case; that such regulations are unjustly discriminative; or that they are not chargeable with making a use of their property, which is unreasonable because injurious to the rights of others.

Inasmuch as the public interests are concerned in the enforcement of the statute, the objection to the right of the People to bring the action is without force; moreover the language of the act explicitly invests the attorney-general with that power.

*In the above-entitled actions the judgment of the Supreme Court was affirmed in the Appellate Division pro forma. Hence the cases are not reported in the Appellate Division Reports.*

(Argued October 18, 1909; decided November 23, 1909.)

APPEAL in each of the first three above-entitled actions from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered September 28, 1909, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

Appeal in the fourth above-entitled action from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered October 6, 1909, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

These actions were brought to have the defendant in each restrained from the further commission of certain acts alleged to be wrongful. The complaint in each action, so far as material to be stated, in substance, alleges the existence in the rocks, which underlie the town and village of Saratoga Springs, of a supply of carbonic acid gas and of natural mineral waters, holding in solution natural mineral salts and an excess of carbonic acid gas; that the pressure exerted by the confined gas tends to expel the waters through the natural vents, or openings, in the rocks and to cause them to issue naturally from the surface of the ground, at different places, as natural mineral springs; that these springs are widely known and resorted to for their therapeutic value as remedial agents and their waters are bottled and sold throughout this country and else-

where; that large sums of money have been invested by the owners of the springs, in their development, and by the inhabitants of the town in the construction of buildings for the entertainment of visitors and to meet their needs and necessities; that the springs are dependent upon the existence of the pressure exerted by the carbonic acid gas confined in the rocks; that the defendant, as the owner of neighboring lands, beneath whose surface percolate large quantities of such mineral waters, flowing from the same general source as the natural mineral springs aforesaid and connected therewith, as part of the same system, maintains an establishment, with machinery and apparatus, for the purpose of extracting from these waters the excess of natural carbonic acid gas and of compressing it into liquid form for commercial purposes; that, through wells bored into the rocks beneath the surface and with powerful pumps, the defendant has produced an accelerated, or unnatural, flow of the waters, by reason whereof the natural flow from the mineral springs in the town is impeded, diverted and endangered, and the quantity of the natural carbonic acid gas diminished; that the acts of the defendant do not subserve any use connected with the enjoyment and usefulness of the land as land and, by affecting the natural flow from the mineral springs, have caused irreparable damage to the people of the state, to the owners of the mineral springs and to other persons, who have invested moneys in buildings for the reception and care of health-seeking visitors; that the defendant, in prosecuting its business, commits a waste of the mineral waters and its acts constitute an unreasonable use of its property and a wrongful diversion of, and interference with, the said waters and gases, and that carbonic acid gas could as economically be produced with the same machinery by artificial means. It is, further, alleged that the defendant's aforesaid acts are in violation of chapter 429 of the Laws of 1908, entitled "An act for the protection of the natural mineral springs of the State and to prevent waste and impairment of its natural mineral waters."

The answers of the defendants in these actions, in sub-

stance, admit that, underlying the surface of the ground in the town and village of Saratoga Springs, there exist carbonic acid gas and mineral waters, holding in solution mineral salts and an excess of carbonic acid gas, which are of therapeutic value; that they were maintaining and operating upon their lands, near the village, establishments for the purpose of extracting from such waters the excess of natural carbonic acid gas; that they compress, liquefy and sell the same; that for their purposes they have bored wells into the rocks beneath and that by the aid of pumps they were drawing waters therefrom. They deny that there is any connection between the springs, or wells, on their premises and other mineral springs in the town; or that the wells are dependent upon the same source of supply; or that they have, by pumping, produced an unnatural flow of waters, or of gas, from their wells; or that they have impaired, diverted, or endangered the natural flow from any other mineral spring in the town; or that the plaintiffs, or the other persons referred to in the complaint, have been injured by reason of any of their acts; or that their acts constitute an unreasonable use of the said mineral water, or gas, or an interference with the same to the plaintiffs' damage, or that of any one else; or that carbonic acid gas can be artificially produced for commercial purposes as economically as from the mineral waters upon their premises. All allegations of damage to the other springs, or to the property rights of others, are particularly denied by the answers. The defendants then set forth, at some length, and justify, the nature of the business in which they have been engaged and in which large sums of money have been invested. They allege the necessity of sinking wells into the rock, in order to reach the waters, and of the use of pumps, in order to raise them to the surface; that such pumps do not attract the waters from the adjoining lands; that, by their use, the natural flow of water and gas upon their premises is not exceeded and that there has been but a reasonable use of their property. The defendants, also, allege that chapter 429 of the Laws of 1908 is unconstitutional and void, in

that it attempts to create an unreasonable and arbitrary classification of wells.

Upon the trial of these actions, at the Special Term, motions to dismiss the complaints, upon the ground that no cause of action had been stated and of the unconstitutionality of the act, were denied and the rulings were excepted to. The defendants offered evidence to show the effects of pumping from wells, and of pumping, generally, and that no injury was caused by their acts to any other spring, or well; but the evidence was excluded and exceptions were taken. Judgments were ordered for the plaintiffs, restraining the defendants from pumping from any well, made by boring into the rock, that class of mineral water holding in solution natural mineral salts and an excess of natural carbonic acid gas, for the purpose of extracting and vending such gas as a commodity, otherwise than in connection with the mineral water and other mineral ingredients with which associated.

These judgments were affirmed by the Appellate Division, in the third department, and the defendants have further appealed to this court.

*Edgar T. Brackett* for appellant in first three actions. The act under which the action is brought, chapter 429 of the Laws of 1908, prohibits pumping of the mineral water in question, even where the purpose is to extract, collect, compress, liquefy and vend such gas as a commodity otherwise than in connection with the mineral water and the other mineral ingredients with which it was associated only where such pumping accelerates or increases the flow or produces an unnatural flow of the water or natural carbonic acid gas from wells bored into the rock. (*Hathorn* v. *Nat. Carbonic Gas Co.*, 194 N. Y. 326.) If by the act in question it was not intended to affix the element of acceleration or increase of flow to the prohibition against pumping but was intended to prohibit pumping absolutely, then such prohibition is unreasonable and void. (Freund's Police Power, 58 ; *Marburg* v. *Madison*, 1 Cranch, 137 ; *Plessy* v. *Ferguson*, 163 U. S.

537; *Reagan* v. *F. L. & T. Co.*, 154 U. S. 362; *W. R. R. Co.* v. *Jacobson*, 179 U. S. 287; *Covington* v. *Sandford*, 164 U. S. 578; *L. S. & M. S. R. R. Co* v. *Smith*, 173 U. S. 684; *Ritchie* v. *People*, 155 Ill. 98; *Ruhstrat* v. *People*, 185 Ill. 133; *Matter of Jacobs*, 98 N. Y. 98; *Wright* v. *Hart*, 182 N. Y. 330.) The construction that the act absolutely prohibits pumping where the purpose is to extract the gas and sell it separately from the water, whether it injures any other person or well, renders the provision of the act void for the reason that it, thus construed, takes the appellant's property without compensation. (*Forster* v. *Scott*, 136 N. Y. 577; *Matter of Jacobs*, 98 N. Y. 98; *People* v. *Otis*, 90 N. Y. 48; *Wynehamer* v. *People*, 13 N. Y. 378.) The act is void as creating an arbitrary classification between the springs that go into the rock and those that do not go into the rock. (*Matter of Potter*, 161 N. Y. 84; *Missouri* v. *Lewis*, 101 U. S. 22; *Barbier* v. *Connolly*, 113 U. S. 27; *Yick Wo* v. *Hopkins*, 118 U. S. 356; *Hayes* v. *Missouri*, 120 U. S. 68; *Ritchie* v. *People*, 155 Ill. 98; *State* v. *Loomis*, 115 Mo. 307; *Van Zandt* v. *Waddel*, 2 Yerg. 260; *Dibrell* v. *Morris*, 15 S. W. Rep. 87; *People* v. *Van de Carr*, 91 App. Div. 20.)

*Alton B. Parker* and *Guthrie B. Plante* for appellant in fourth action. The plaintiff failed to make out a cause of action under chapter 429 of the Laws of 1909. (*Hathorn* v. *Nat. Carbonic Gas Co.*, 194 N. Y. 326; *O. O. Co.* v. *Indiana*, 177 U. S. 190; *W. N. G. Co.* v. *De Witt*, 130 Penn. St. 235; *Brown* v. *Spilman*, 155 U. S. 665; *Routh* v. *Driscoll*, 20 Conn. 533; *Fraser* v. *Brown*, 12 Ohio St. 294; *S. P. R. R. Co.* v. *Dufour*, 95 Cal. 615; *Huber* v. *Merkle*, 117 Wis. 535.) The exclusion by the trial court of evidence offered to establish as a matter of fact that the provisions of the statute are unconstitutional and void constitutes reversible error. (*People ex rel. M. S. Ry. Co.* v. *Tax Comrs.*, 174 N. Y. 417; *Sweet* v. *City of Syracuse*, 129 N. Y. 316; *S. V. Water Works* v. *City of San Francisco*, 124 Fed. Rep. 574; *C. G. Co.* v. *City of New York*, 157 Fed. Rep. 849; *Mugler* v.

*Kansas*, 123 U. S. 623; *Fisher* v. *Woods*, 187 N. Y. 90; *Lindsley* v. *N. C. G. Co.*, 162 Fed. Rep. 954; *People* v. *Gillson*, 109 N. Y. 389; *Townsend* v. *State*, 47 N. E. Rep. 49; *Cotting* v. *Kansas*, 183 U. S. 79.) The burden of establishing their cause of action was upon the plaintiffs. This burden did not shift. (*Heineman* v. *Heard*, 62 N. Y. 488; *City of Cohoes* v. *D. & H. C. Co.*, 134 N. Y. 397; *Miller* v. *Roessler*, 4 E. D. Smith, 234; *Grant* v. *Riley*, 15 App. Div. 190; *Wilcox* v. *Wilcox*, 46 Hun, 32; *N. Y. & B. F. Co.* v. *Moore*, 18 Abb. [N. C.] 106.)

*Edward R. O'Malley, Attorney-General* (*D. E. Brong, Charles C. Lester* and *Nash Rockwood* of counsel), for respondent. Acceleration of flow need not be shown in an action to enforce the third prohibition of the statute. (*Jackson* v. *Lewis*, 17 Johns. 477; *W. & W. T. Co.* v. *People*, 9 Barb. 170; *Newell* v. *People*, 7 N. Y. 97; *McClusky* v. *Cromwell*, 11 N. Y. 600; *Thornley* v. *U. S.*, 113 U. S. 313.) The act is to be presumed constitutional until the contrary is shown. (*Munn* v. *Illinois*, 94 U. S. 113; *P. S. Co.* v. *West Virginia*, 36 W. Va. 302; *Beecher* v. *Allen*, 5 Barb. 169; *People ex rel. City of Rochester* v. *Briggs*, 50 N. Y. 533; *People* v. *Draper*, 15 N. Y. 532; *People ex rel. Carter* v. *Rice*, 135 N. Y. 437; *People ex rel. Sturgis* v. *Fallon*, 152 N. Y. 1; *Cronin* v. *People*, 82 N. Y. 318; *Granger* v. *D. P. J. Club*, 148 Fed. Rep. 513; *McLean* v. *Arkansas*, 211 U. S. 547.) Chapter 429 of the Laws of 1908 does not invade any property rights of the defendants. (*Hathorn* v. *Nat. C. G. Co.*, 194 N. Y. 326; *Forbell* v. *City of New York*, 164 N. Y. 522; *Smith* v. *City of Brooklyn*, 18 App. Div. 340; *M. W. Co.* v. *City of Brooklyn*, 32 App. Div. 454; *Westphal* v. *City of New York*, 75 App. Div. 562; 177 N. Y. 140; *State* v. *O. O. W. Co.*, 150 Ind. 21; 47 L. R. A. 632; *W. & C. Nat. G. Co.* v. *De Witt*, 130 Penn. St. 235; *Jones* v. *Forest Oil Co.*, 44 Atl. Rep. 1074; *Brown* v. *Vandergrift*, 80 Penn. St. 142.) The act in question is a valid exercise of the police power vested in the legislature of the state of New York.

(Cooley on Const. Lim. 572; *People* v. *Squires,* 107 N. Y. 605; *Comm.* v. *Alger,* 7 Cush. 85; *Meffert* v. *Packer,* 66 Kan. 710; 195 U. S. 625; *People* v. *King,* 110 N. Y. 418; *Barbier* v. *Connelly,* 113 U. S. 31; *C., B. & Q. Ry. Co.* v. *Comm.;* 200 U. S. 592.) The third prohibition of the act is not unreasonable in its character or extent. (*Hathorn* v. *N. C. G. Co.,* 194 N. Y. 326; *Booth* v. *Illinois,* 184 U. S. 425; *Welch* v. *Swasey,* 214 U. S. 91; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Mugler* v. *Kansas,* 123 U. S. 623; *C. B. & R. I. R. R. Co.* v. *Chicago,* 166 U. S. 226; *C., B. & Q. R. R. Co.* v. *Drainage Comrs.;* 200 U. S. 561; *W. C. R. R. Co.* v. *Chicago,* 201 U. S. 506.) The act does not violate section 1 of the fourteenth amendment of the Federal Constitution in denying to persons the equal protection of the laws. (*Barbier* v. *Connelly,* 113 U. S. 27; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *State* v. *Hogan,* 63 Ohio St. 202; *Dent* v. *West Virginia,* 129 U. S. 114; *Jones* v. *Brine,* 165 U. S. 184; *Minn* v. *Beckwith,* 129 U. S. 29; *Soon Hing* v. *Crowley,* 113 U. S. 705; *Louisiana* v. *Schlemmer,* 42 La. Ann. 1166; *City of Des Moines* v. *Keller,* 116 Iowa, 648; *Sutton* v. *State,* 96 Tenn. 696.) The court committed no error in excluding extraneous testimony offered to impeach the constitutionality of the statute. (*People* v. *Cipperly,* 37 Hun, 318; *Matter of N. Y. El. Co.,* 70 N. Y. 327; *W. M. M. Co.* v. *Shanahan,* 128 N. Y. 358; *Mugler* v. *Kansas,* 123 U. S. 623; *Powell* v. *Pennsylvania,* 127 U. S. 678; *Cantwell* v. *City of Missouri,* 170 Mo. 245; 199 U. S. 602; *Jacobson* v. *Mass,* 196 U. S. 30; *Peck* v. *C. R. R. Co.,* 94 Fed. Rep. 164.)

Gray, J. It is difficult to understand upon what ground the evidence offered by these defendants was excluded; unless it be the interpretation given to our decision of the case of *Hathorn* v. *Natural Carbonic Gas Co.,* (194 N. Y. 326). No opinion appears to have been expressed below and I think we must presume it to have been considered that the statute, which authorized the plaintiff to maintain the actions, (Laws of 1908, chap. 429), as construed by this court, abso-

lutely prohibited the pumping of the mineral waters in ques-
tion, as practiced by the defendants in the conduct of their
particular business. The decision of the trial court, as it is
formulated in the judgment roll, finds that the acts of the
defendants in pumping from their wells mineral waters, for
the purpose of extracting and vending the carbonic acid gas,
separately, as a commodity, were contrary to the provisions of
the act and are " injurious to the People of the State of New
York and tend to the waste and impairment of the natural
mineral waters of said State." That is to say, if the judg-
ments in these actions are sustained, the legislative enactment
of 1908 operated to prohibit, as unlawful, all pumping from
wells, bored into the rock, of mineral waters, holding in solu-
tion mineral salts and an excess of carbonic acid gas, for the
purpose of extracting, liquefying, or vending, separately,
such gas, as an article of commerce, and the prohibition is to
be enforced irrespective of whether the use by the defendants
of their properties was a reasonable one, or not, relatively to
the legal rights of other landowners. That this view of the
arbitrary action of the statute must have obtained below seems
evidenced by the finding, which I have just quoted from, as
to the effect of the acts complained of.

I think that the opinion of this court in the *Hathorn Case*,
(*supra*), must have been greatly misapprehended, both as to
the basis upon which it was rested and as to the principles
sought to be established thereby. In that case, it was, cer-
tainly, intended to determine the constitutionality of the act
of 1908 and that an action brought by taxpayers, (who were,
also, spring owners), upon a complaint making like charges
against one of these defendants, might be maintained under
the provisions of the act, as well as at common law ; but it is
to be, particularly, observed that, in that case, we had before
us in the record the admission by demurrer of the material
facts pleaded in the complaint. A careful reading of the
opinion will, in repeated instances, show that in reaching con-
clusions attention was called to the effect upon construction
of the admission of the state of facts exhibited by the plead-

ing.   The complaint in the Hathorn action did not differ, in
its allegations, materially, from the present complaint and the
demand for relief was for an injunction against the use by
the defendant of pumps for the purpose of accelerating the
flow of subterranean waters and gas through deep wells.
Naturally, the demurrer to the complaint presented the ques-
tion whether, by force of the provisions of the act of 1908,
or at common law, such an action was maintainable and the
equitable relief warranted.   Reasoning upon the principles of
the common law, as applicable to the subject of rights in sub-
surface and percolating waters, it was considered that the doc-
trine, varying from that of the early English and American
cases, which followed *Acton* v. *Blundell*, (12 M. & W. 324),
and gave to a landowner an absolute right to all that lay below
the surface of his lands, to the later restriction imposed upon
that right, when its exercise was unreasonable, because not
relating to the use, or enjoyment, of the land itself, became,
finally, settled by the decision in the case of *Forbell* v.
*City of New York*, (164 N. Y. 522).   That case laid down
the rule of the reasonable use of percolating waters.   It was
held that " whatever it is reasonable for the owner to do with
his sub-surface water, regard being had to the definite rights
of others, he may do."   It was held not to be unreasonable
that he should take, through wells, all the water he needs for
" the fullest enjoyment and usefulness of his land as land ";
but that it was unreasonable for the landowner " to tap the
water stored in the plaintiff's land, and in all the region there-
about, and lead it to his own land, and, by merchandizing it,
prevent its return." (P. 526.)   The adoption of this doctrine of
a reasonable use of one's property in subterranean percolating
waters, to be measured by the rights and necessities of others,
as a modification of the earlier rule, obviously, resulted from a
consideration of the differing conditions of the age and of the
possibilities of an unlimited and destructive use from modern
engineering methods.   The doctrine of *Forbell's* case was
held by us to be applicable in the decision of the *Hathorn*
case ; inasmuch as the situation was " relatively, of the same

general character." The defendant in the *Hathorn* case, upon admitted facts, "by artificial and unusual methods had so increased the flow of percolating waters and gas upon its lands, that it was obtaining a greatly increased proportion of a common supply at the expense of its neighbors * * * in order to supply a public market for a portion of these products while the others are wasted." It was said "if these facts, resting now merely on the allegations of a pleading, *shall be established by evidence*," the conclusion will be authorized that they disclose a case of "unreasonable and improper conduct * * * and make out * * * a sufficient cause for appeal to, and relief by, a court of equity." That application was made of the common-law rule of the reasonable use of sub-surface waters, as settled, is, further, made clear by the holding that "no distinction in this case can be predicated upon the peculiar character and quantity of the salts. and gases which happen to be in solution." (P. 338.) Having considered the plaintiff's right to relief upon common-law principles, the effect of the act of 1908, (L. 1908, Chap. 429), was next discussed, and the objections urged to the validity of the legislation were overruled. The prohibition of the act was held to be effective to restrain the defendant from the commission of the acts alleged and to prevent the destruction, or diminution, of the flow of waters under the lands of others, for the purpose of diverting them to some use entirely disconnected with the improvement and enjoyment of the defendant's land. As such results were alleged by the complaint to have been occasioned by the defendant's acts and were to be regarded as admitted by the demurrer, it, necessarily, followed that a cause of action was stated under the statute. I do not think any particular discussion of the provisions of the act to be called for, other than to mention what was decided in the *Hathorn* case and what application was there made of the statutory prohibition. The act of 1908 contained four prohibitory clauses, more or less, directed to the purpose as declared in the title, namely: "the protection of the natural mineral springs of the State and to prevent waste and impairment of

its natural mineral waters." Of these four clauses, three were condemned, because too broad and unqualified, when tested by the common-law rule governing the landowner's property rights. The third clause was upheld. That contained a provision prohibiting pumping, or otherwise drawing by artificial appliance, from any well, bored into the rock, that class of mineral waters holding in solution natural mineral salts and an excess of carbonic acid gas; or pumping, or by any artificial contrivance whatsoever, in any manner, producing an unnatural flow of carbonic acid gas, issuing from, or contained in, any such well, " for the purpose of extracting, collecting, compressing, liquefying or vending such gas as a commodity otherwise than in connection with the mineral water." This provision was upheld, distinctly, upon the ground that it would be enforceable within the operation of the settled common-law rule, which forbids an unreasonable use of sub-surface waters to the injury of another's rights. " It was entirely proper ", it was said, " for the legislature to adopt the provision in question defining and regulating the rights of persons desiring to use mineral waters like those of Saratoga Springs and to prevent such use thereof as would either result in waste of the natural resources of the land to the injury of general and public interests, or in the unreasonable impairment of the rights of others entitled to draw from a common source." (p. 343.) As these results flowed from the defendant's use of its wells, under the allegations of the complaint, the statutory prohibition was held to apply and to be available in protection of the plaintiff's rights. It is, or should be, clear from the opinion that the act was construed in the light of the common-law rule and, so far as it did not contravene that rule, its prohibition was valid, when invoked for the protection of those, who were suffering injury to their legal rights from the unreasonable use made by another of his property, in a region covered by the terms of the act. What we intended to hold, and, as I think, did hold, was that, while a landowner was entitled to make every use of the waters flowing under the surface of his land, which might be for the

legitimate improvement, or enjoyment, of his lands, however
it interfered with others as a natural consequence, if his use
was unreasonable, in the sense that he was attempting to
increase the flow of the waters upon his lands, for a purpose
not connected with such improvement, or enjoyment, and to
the destruction, or diminution, of the flow under the adja-
cent lands of others, he was committing an unlawful act. The
waste committed by an owner in his use of his property, if
complained of, must appear to be such as affected the rights of
other landowners to the appropriation of the sub-surface
waters, existing as a common source of supply and within the
area subject to the influence of the mechanical contrivances
for their increased flow.

Our decision in the *Hathorn* case affirmed the constitu-
tionality of the act of 1908, in question, and its applicability
to the case of the plaintiffs was upheld upon the facts as they
stood admitted by the defendant's demurrer. It is, of course,
not proper that some isolated expression in the opinion of
Judge Hiscock should be selected, in order to give color to
the argument for a broader and more unqualified application
of the statute; but it should be read in connection with the
context and in the light of the very careful reasoning, by which
the conclusions as to the applicability of the act are guarded.

But the situation of these parties in the trial court, from
which this judgment comes, was altogether different from
what it was in the *Hathorn* action. All the allegations of
this complaint were denied, which had relation to the acts of
the defendants, in their effect upon the adjacent lands of
other owners and upon the rights of others to the common
enjoyment of the subterranean mineral waters, and, generally,
to acts alleged as constituting an unreasonable use by the
defendants of their properties. It was averred, in defense,
that it was necessary to make use of wells and of pumps in
the prosecution of the defendant's business and, further, that
the mineral waters and gas were found both in wells extend-
ing into the rock and in those reaching into the soil, and that
no reasonable basis existed for discriminating against the

former as a use of one's property. There resulted, therefore, issues which had to be determined upon evidence, before a judgment could, properly, deprive the defendants of their right to prosecute a business, which, in itself, was lawful. The legislature could not enact arbitrarily upon the subject and we should not so read the act, in question. We must read into it the intent to regulate the conflicting rights of landowners, who derive enjoyment, or profit, from the use of these waters within the earth and of their constituent ingredients and gases. In that aspect, the enactment was a proper exercise of the police power, which the government possesses and by which, among other objects of governmental solicitude, it regulates the intercourse of citizens and insures " to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a like enjoyment of rights by others." (*People ex rel. N. Y. Electric Lines Co.* v. *Squire,* 107 N. Y. 593, 605; Cooley's Constit'l Limitations *572.) It is for the interest of the state that no one should use his own property improperly ; but the state could not, under the plea of protecting its natural resources, arbitrarily, arrest the work of the defendants and deprive them of the right to prosecute a lawful business, whatever its effect upon the subterranean mineral waters and gases. Such an exercise of the police power would be highly unreasonable and irreconcilable with the rules of law, under which rights in property have been held and recognized. To prohibit the defendants from conducting a lawful business, in the manner they had established, is to destroy a right, which they possessed, and, it may be, to annihilate the business ; but, whatever the degree, it is a taking of property within the constitutional provision. (*Wynehamer* v. *People,* 13 N. Y. 378; *In re Jacobs,* 98 ib. 98.) It does not appear that the state has any property in mineral springs to protect. The land affected is held in private ownership and if the rights of an owner to its full use and enjoyment, in lawful ways, are destroyed, or impaired, property is taken and that the Constitution of the state forbids; unless, when taken for public uses, just compensation be

made. Authority to acquire any interest, or easement, in mineral spring properties, in, or near, Saratoga Springs, appears to have been, already, conferred by an act passed by the legislature in its last session, which contains provisions for compensation to those affected by the taking. (Laws of 1909, chap. 569). The act and the authority to enforce it by an action in the name of the People are to be construed, not as intending to exercise governmental power arbitrarily, but as promulgating a rule, with authority to a taxpayer, or to the law officer of the state, to enforce obedience to it by an action, which should regulate the appropriation and use of this common natural supply by owners of lands coming within the provisions of the statute. It is quite within a reasonable exercise of the police power to regulate such rights; for all property is held subject to the power of the state to regulate, or control, its use, in order to secure the general safety, or the general welfare. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509, 521.) "Every holder of property, however absolute and unqualified may be his title, holds it under the implied liability that his use of it may be so regulated, that it shall not be injurious to the equal enjoyment of others having an equal right to the enjoyment of their property, nor injurious to the rights of the community." (Per SHAW, C. J., in *Commonwealth* v. *Alger*, 7 Cush. 84.) Under our system of government, the power to bind all by reasonable measures, looking to the regulation and security of those rights, must reside with the legislature. Its exercise of power, in such respects, is subject to the supervision of the courts and where it can be seen that the legislation is sane and reasonably necessary, neither arbitrary, nor unduly oppressive, it will be upheld.

The objection to the right of the People to bring such an action, that it relates to private interests, is without force, as we held in the *Hathorn* case; inasmuch as the public interests are concerned in the enforcement of the statute. But whatever the argument, the language of the act investing the attorney-general with power to bring an action is explicit and that is enough. (*People* v. *Ballard*, 134 N. Y. 269.) If reason

is sought for authorizing such an action, it is readily found in the extensive nature of the industries connected with the sub-surface mineral waters and gases of such a locality as Saratoga Springs. The territory affected includes a large area of land in the town of that name; the interests in the development and use of these natural products are large and many, and the pernicious effects of an unreasonable and unlawful use by any one might be widespread. The right of the People to demand that wasting of the product be restrained must rest upon the ground that it is destructive of the rights of landowners to an equal appropriation and enjoyment of a natural product. In *Ohio Oil Co.* v. *Indiana,* (177 U. S. 190, 210), the statute assailed made it unlawful for the owner of a gas, or oil, well to permit the flow of either product, except under certain restrictions, intended to prevent the depletion of the general supply. The state brought an action against the oil company, pursuant to the statute. The legislation was upheld and the exercise of legislative power justified, because of " the peculiar nature of the right and the objects upon which it is to be exerted." " The power can be manifested," it was said, " for the purpose of protecting all the collective owners, by securing a just distribution, to arise from the enjoyment by them, of their privilege to reduce to possession, and to reach the like end by prevent-ing waste." I entertain no doubt that the power could be properly lodged with the attorney-general, to be exercised in his discretion, to maintain an action for the purpose of restraining acts of landowners, when in violation of the provisions of the act.

But, inasmuch as the proper reading of the third provision of the act forbids a construction that it is unqualifiedly prohibitory of the pumping of the mineral waters, for the purpose of separating and vending the gas as a commodity, without reference to the reasonableness of such a use of the property, relatively to the rights of others, the importance and materiality of evidence, offered by a defendant to show that his wells, with their pumping appliances, caused no unnatural flow and had no effect upon the properties of others,

entitled to draw from a common source of supply, become apparent. The right to equitable relief depends upon whether that which is demanded appears to be proper upon an investigation of the facts. That the statute is not applicable to their case, the defendants should have been permitted to show by any competent evidence. They were entitled to show the situation of their wells, the necessity of the pumping appliances used and that no acts of theirs, in that respect, affected any other spring, or well, or resulted in injury to any other person. Evidence to show the comparative effects upon the sources of supply of the mineral waters and gas of pumping from wells, which are bored into the rock, and from those which are driven into the soil, was, also, fairly within the issues. Of course, the purpose of such evidence was to show that the act of 1908 violates that provision of the Federal Constitution, which prohibits a state from denying "to any person, within its jurisdiction, the equal protection of the laws," in that an arbitrary classification was made of wells bored, or drilled, into the rock. That point was considered in our opinion in the *Hathorn Case*, (*supra*); where it was held that the classification was valid, if "based on some sufficient reason and not on mere caprice or arbitrary election. * * * Under the admitted allegations of the complaint * * * a proper basis existed for the classification made by the Legislature." From those allegations it appeared that differing conditions prevailed in the two classes of wells and that pumping from those bored into the rock was much more exhaustive and destructive of the common rights. There, as here, the complaint showed that the excess of gas existing in the cavities of the rocks exerted a great pressure, which tends to expel the waters and gas and to cause them to flow naturally to the surface, and that the mineral springs were dependent for their existence upon such pressure. But, in the present case, these allegations were put in issue. It was claimed, in the answers, as a ground for assailing the constitutionality of the act, that the acceleration of the flow by pumping from wells, whether extending into the rock, or into the soil, and

the effect upon the gas and the water charged therewith, in either case, were, in all respects, the same. I think that the defendants were entitled to give any competent evidence that they had, in support of their defense to the validity of the act, that, as its provision rested upon no real basis, in discriminating against wells bored into the rock, the prohibition was an unreasonable exercise of power. Such proof would not be objectionable, because going to show the statute to be on its face invalid; it would bear upon the reasonableness of its classification and go to show whether its provisions, in attempting a regulation of the conflicting rights of all to a common, natural, supply, operated unequally upon the rights of a class of property owners. On its face the third prohibitory provision of the act appears to be valid, as we have held in the *Hathorn* case. The legislature assumed the existence of a fact, so notorious in external nature as to be a matter of common teaching and knowledge, that gas, as an elastic aeriform fluid, when confined, exerts pressure; that the natural tendency will be to expel the waters, which hold them in solution, when generated, through any vent, or opening, in the rocks, where confined, and that the boring of wells into such rocks would diminish the pressure and thereby destroy, or seriously impair, the force, which was necessary to the natural flow observed in the mineral springs. If the defendants were able to show that this scientific fact in the natural world had no application to their situation and that there was no difference, in the effect upon the general source of supply, between pumping from wells bored in the rock or from those driven in the soil, or in the effect upon the springs of other landowners, I think they were entitled to present that evidence for the consideration of the court in determining the reasonableness and validity of the legislative measure.

As to the burden of proof I think it rested upon the defendants. There was enough admitted as to the situation, the character of the waters and the nature of the work conducted by the defendants, to bring them, *prima facie*, within the operation of the act. The People were entitled to rest upon

the presumption of the validity of its provision and upon the support to their case in the admissions made and in the inferences of facts from the operation of natural laws, until the evidence of the defendants established, or tended to establish, their defenses that the statutory provisions were inapplicable to their case; that such regulations were unjustly discriminative; or that they were not chargeable with making a use of their property, which was unreasonable because injurious to the rights of others.

For these reasons, I advise that the judgments in these four actions be reversed and that new trials be ordered; with costs to abide the event.

Cullen, Ch. J.  I concur in the opinion of Gray, J., for reversal of the judgments appealed from in these cases, but desire to add a word in answer to one argument pressed on us by the learned attorney-general. It is urged that the public have such an interest in the mineral waters of Saratoga, because of their great curative and health giving properties, that the legislature may interpose for their protection under the right of the state in the exercise of its police power " to protect and develop its natural resources", even though the waters themselves are the property of private persons. I deny that the police power vests in the legislature any such right. " The police power of the government, as understood in the constitutional law of the United States, is simply the power of the government to establish provisions for the enforcement of the common as well as civil law maxim, *sic utere tuo, ut alienum non lædus* " (Tiedeman's Limitations of Police Power, p. 4), that is to say, one cannot use his own property so as to injure the rights of others, nor can he use it in such a manner as to offend against public morality, health or peace and good order. In the exercise of this power, doubtless, the legislature may not only prohibit acts of commission on the part of the owner, but acts of omission, provided the result of such omission is to invade the rights of others or those of the public. But under that power the leg-

islature cannot require an owner to use his property for the advantage and benefit of others or of the public, or even for his own benefit, nor restrain him from devoting it to such purpose as he sees fit, or even from wasting it, provided such use does not conflict with the rights of others or the public. (*Matter of Ryers*, 72 N. Y. 1.) A man owning a coal mine may mine the coal and waste it, regardless of the interest of the present generation or of succeeding ones. It is not that such conduct would not be an evil, but because the people who framed our system of government taught by experience deemed it wiser to trust the use of property to the dictates of the intelligent self-interest of the owner, rather than to subject it to governmental interference.

That the right to appropriate springs and subterranean waters is an incident of the ownership of the land is settled by a long line of authorities, to one of which only it is necessary to refer. (*Bloodgood* v. *Ayers*, 108 N. Y. 400, 405.) There Judge Finch, writing for the court, said: "No stream or water-course ran from the spring. The source from which it came and the flow of its waste or surplus were alike under ground, concealed, and matters of speculation and uncertainty. Such a spring belongs to the owner of the land. It is as much his as the earth or minerals beneath the surface; and none of the rules relating to water-courses and their diversion apply." That doctrine has been limited by the case of *Forbell* v. *City of New York* (164 N. Y. 522), because, as pointed out in the opinion of Judge Gray, modern engineering has created conditions unknown at the time of the old authorities. The modification, however, is only this: that the absolute right of appropriation as against other landowners who may be injured thereby extends only to a reasonable use of the water. The reasonableness of the use, however, is a question between the several landowners, not between the landowner and the public unless an actual stream or watercourse is affected. If the appropriation does not affect other landowners the right to appropriate underground waters is unqualified.

I concurred in the affirmance of the judgment in the

*Hathorn* case because, on the facts alleged in the complaint in that case, I thought the defendant's use of the water unreasonable within the doctrine of the *Forbell* case, and I concurred in upholding the statute because I deemed it an adjustment of conflicting private rights and the apportionment of a common property right among several owners. That is a recognized branch of the police power. (*Dorrity* v. *Rapp*, 72 N. Y. 307; *Ohio Oil Co.* v. *Indiana*, 177 U. S. 190.) If, however, the fact is that the source of supply from which the defendant draws water is not a common one, but exclusively on its own land, or if its appropriation of the water in no way affects the supply of water on other lands, then the statute has no application.

HAIGHT and WILLARD BARTLETT, JJ. We concur in the result reached in the opinion of GRAY, J., and concur in the opinion of the chief judge in so far as he discusses the right of the state, in the exercise of its police power, to interfere with the production of mineral water by private persons upon their own land.

EDWARD T. BARTLETT, WERNER and HISCOCK, JJ., concur with GRAY, J., and CULLEN, Ch. J.; HAIGHT and WILLARD BARTLETT, JJ., concur in result in memorandum.

Judgments reversed, etc.