(83 Misc. Rep. 582)

HATHORN et al. v. NATURAL CARBONIC GAS CO. PEOPLE v. SAME. PEOPLE v. NATURAL CARBONIC GAS CO. et al.

(Supreme Court, Special Term, Albany County. January, 1914.)

INJUNCTION (§ 129*)—VOLUNTARY DISCONTINUANCE—RIGHT.

Where, in actions to enjoin defendant all parties agree that facts occurring since the commencement of the actions render the trial thereof futile so far as it may affect the merits of the issues, plaintiffs are entitled to a discontinuance without costs to either party or prejudice to any right of action which defendant may have on the injunction bond.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 279–287; Dec. Dig. § 129.*]

Three actions for injunction, one by Emily H. Hathorn and another, and two by the People, all against the Natural Carbonic Gas Company, others being joined as defendants in one action. Motion to discontinue actions allowed.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

See, also, 140 App. Div. 943, 125 N. Y. Supp. 1123; 194 N. Y. 326, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989; 196 N. Y. 421, 90 N. E. 441.

Rockwood, McKnight & McKelvey, of Saratoga Springs (C. C. Lester, of Saratoga Springs, of counsel), for plaintiffs Hathorn.

Thomas Carmody, Atty. Gen. (C. C. Lester, of Saratoga Springs, of counsel), for the People.

Morris & Plante, of New York City, for defendant Natural Carbonic Gas Co.

CHESTER, J. The plaintiffs in the first entitled action move for a discontinuance upon the ground that matters have arisen subsequently to the commencement of the action, and to the issuance of the temporary injunction therein, having no relation to the merits, which render it futile that the action proceed further. The defendant in that action makes a countermotion to dismiss the action with costs because of the failure of the plaintiffs to diligently prosecute the same, and because the questions involved, except as to any damages that may have been sustained under the undertaking given by the plaintiffs to the defendant to procure the temporary injunction, have become academic, and that the plaintiffs could not now secure a permanent injunction. The defendant in the last two entitled actions moves to dismiss the complaints with costs for failure of the plaintiffs to prosecute, and because the questions involved have become purely academic. All these motions may be considered together. The actions were brought under the act known as the Anti-Pumping Law (Laws of 1908, c. 429), entitled "An act for the protection of the natural mineral springs of the state and to prevent waste and impairment of its natural mineral waters."

The complaints charged, in substance, that the defendant Natural Carbonic Gas Company had, by the use of wells drilled in the rock and powerful pumps used therein, caused an unnatural flow to its wells, and that this was done for the purpose of extracting from the natural mineral waters the excess of carbonic acid gas to be used for sale separate from the waters, and by that means had unlawfully impaired and diminished the natural flow at the wells of other owners in the vicinity. Injunctions were sought against the defendant to restrain such pumping, as being in violation of that law. Shortly after the commencement of the Hathorn action, the one first entitled, a preliminary injunction was secured by the plaintiffs therein, and as a condition of such injunction they were required to and did furnish an undertaking to the defendant with the National Surety Company as surety thereon, in the sum of $20,000, conditioned that the plaintiffs would pay all costs and damages that might be sustained by the defendant by reason of said injunction if it should be finally decided therein that the plaintiffs were not entitled thereto. The decision granting such injunction is reported in 60 Misc. Rep. 341, 113 N. Y. Supp. 458. It was sustained on appeal to the Appellate Division in 128 App. Div. 33, 112 N. Y. Supp. 374, and in the Court of Appeals, with a slight

modification, in 194 N. Y. 326, 87 N. E. 504, 23 L. R. A. (N. S.) 436, 128 Am. St. Rep. 555, 16 Ann. Cas. 989.

After the order granting the injunction had been sustained on appeal the last two above-entitled cases and various other cases brought in the name of the people of the state against this defendant and other parties, seeking substantially the same relief, were brought to trial at an extraordinary term of the Supreme Court in Albany county, and judgments were rendered for the plaintiffs upon the pleadings, but the Hathorn action was not then disposed of, for it was not then at issue. The judgments in favor of the people on such trials were affirmed pro forma by the Appellate Division, but were reversed and new trials granted by the Court of Appeals (196 N. Y. 421, 90 N. E. 441), because of the exclusion of certain evidence offered by the defendant upon the trial.

While these cases were pending there was also at issue an action brought in the United States Circuit Court by one Lindsley, a stockholder of the defendant, to restrain the plaintiffs and the Attorney General and others from enforcing the statute in question. This case finally reached the United States Supreme Court, where it was decided in March, 1911. Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160. That court overruled the objections urged against the constitutionality of the statute in question, and affirmed the decree of the lower court in dismissing the bill of complaint.

Soon after the decision of the Court of Appeals reversing the judgments in favor of the plaintiffs above mentioned, all the cases were placed upon the calendar at the January, 1910, Trial Term of the Supreme Court in Albany county. The case first moved for trial at that term was People v. New York Carbonic Acid Gas Co., having practically the same issues as the others. The trial of that case was commenced before Mr. Justice Betts, who presided at that term, without a jury. A vast amount of testimony was taken and numerous adjournments had. Justice Betts was assigned to the Appellate Division in the third department on the 4th day of January, 1911, before the trial had been concluded, so that it resulted in a mistrial. While there was no express stipulation that the testimony in the case being tried should be used in the other cases, it is apparent from the record that it was the understanding of the court and the parties that, because of the voluminous nature of the testimony it should not be repeated so far as it was applicable in the other cases, but should be read in evidence therein. It is also apparent that it was the intention of all of the parties to have all the cases tried before Mr. Justice Betts at that term, and that this was prevented by his designation to the Appellate Division.

Another complication arose by reason of an action brought in the United States Circuit Court against the defendant by one Stratton, late in the year 1910 or early in the year 1911, alleging the insolvency of the defendant and asking for the foreclosure of a mortgage upon the defendant's property, and for the appointment of a receiver thereof. A judgment of foreclosure was had therein and a receiver appointed, and a sale of all the defendant's lands and property, including its wells,

146 N.Y.S.—18

was made in March, 1911. Thereafter a new corporation bearing the same name was organized, for the purpose of acquiring title to the properties of the old corporation and operating the same, but there has been no substitution of the new corporation as defendant.

Another cause for delay, and one which changed the situation of the parties materially, is found in the fact that on the 16th day of February, 1911, the commissioners of the state reservation at Saratoga Springs, appointed pursuant to chapter 569 of the Laws of 1909, appropriated the lands of the plaintiffs in the first entitled action by virtue of the power of eminent domain, to constitute a part of the state reservation at Saratoga Springs.

The commissioners of the state reservation, too, pursuant to said chapter 569 of the Laws of 1909, made an agreement with the defendant or its successor under which its lands and wells were conveyed to the state on the 26th day of June, 1911, as a part of such state reservation, and since that date the state has been in continuous possession of all the defendant's lands in question upon which the pumping operations complained of had been carried on.

The defendant is seeking a discontinuance of the actions under an order which would have the effect of adjudicating that the plaintiffs were not entitled to the injunction in the Hathorn case, and undoubtedly a discontinuance on the plaintiffs' application opposed by the defendant, or the discontinuance on the defendant's application for failure to prosecute, would have that effect and would give the defendant a right to recover under the undertaking it holds. Perlman v. Bernstein, 83 App. Div. 203, 82 N. Y. Supp. 148; N. Y. C. & H. R. R. R. Co. v. Village of Hastings, 9 App. Div. 256, 41 N. Y. Supp. 492. But if the action is discontinued or the complaint dismissed for reasons arising after the delivery of the bond to secure a temporary injunction, such discontinuance or dismissal would not of itself entitle the defendant to damages. Apollinaris Co. v. Venable, 136 N. Y. 46, 32 N. E. 555; Taylor Worsted Co. v. Beolchi, 37 Misc. Rep. 693, 76 N. Y. Supp. 379.

The plaintiffs in the Hathorn suit also insist that the test of liability upon the undertaking is the final decision of the action, and, without that or something equivalent to it there is no breach of the condition of the undertaking, and cite in support of the contention Benedict v. Benedict, 15 Hun, 305, affirmed 76 N. Y. 600, Palmer v. Foley, 71 N. Y. 106, Wilson v. Wilson, 130 App. Div. 70, 114 N. Y. Supp. 455, and Freifeld v. Sire, 96 App. Div. 296, 89 N. Y. Supp. 260.

I am of the opinion, however, that in determining the motions now under consideration it is not essential to hold that the plaintiffs in the Hathorn suit were or were not entitled to the injunction at the time it was granted, and that that question could not properly be decided in these motions upon affidavits. The only questions to be determined are whether or not the actions should be discontinued or dismissed, and the reasons therefor, leaving the legal effect of any order for future consideration.

The Code of Civil Procedure in section 822 authorizes the court in its discretion to dismiss the complaint where the plaintiff unreasonably

neglects to proceed in the action, and rule 36 permits the court to dismiss the complaint wherever younger issues have been tried in their regular order upon the calendar, and the defendant insists that the actions should be dismissed for those reasons, but the discretion authorized to be exercised under this section of the Code and this rule is never exercised, and never should be when the plaintiff shows a reasonable excuse for the delay and the failure to prosecute.

From the recital of the facts surrounding these litigations contained in this memorandum, it appears to me that the plaintiffs have shown ample excuse and justification for their failure to secure an earlier trial of the issues presented.

Indeed, I would be reluctant to hold, in view of the difficult and unusual nature of the cases and the character and course of the litigations, that the plaintiffs in all the cases had not proceeded with reasonable diligence and taken every step open to them as soon as they reasonably could, and therefore it would be an improper exercise of discretion to dismiss the complaints because of the alleged delay in prosecuting.

Manifestly if a trial of any of the actions should now be had, no injunction could be had against the defendant to prevent pumping, because it does not now own the wells, the pumping of which it was sought to restrain, and because the state does own them. This condition arises, not because of anything affecting the merits of the controversy, but because of facts occurring subsequently to the commencement of the actions.

All parties agree that the facts occurring since the actions were commenced will now render the trial of the actions futile so far as determining any question affecting the merits of the issues involved is concerned. The courts should not be burdened with the trial of issues that will be of no avail to any one, and, if the defendant deems that it has been aggrieved because of the temporary injunction in the Hathorn case, it should be left to any action or proceeding on the undertaking it holds in that action, which it may be advised to take.

Orders may be presented for signature discontinuing all the actions without costs by either party as against the other, because of the after-occurring facts mentioned, and without prejudice to any action or proceeding which the defendant may be advised to take on the undertaking it holds in the Hathorn case.

Ordered accordingly.